UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-v-<br><br>HECTOR SANCHEZ,<br><br>                        Defendant. | 18 Cr. 390-3 (PAE)<br><br>ORDER |

PAUL A. ENGELMAYER, District Judge:

The Court has received an application from defendant Hector Sanchez seeking his release from Federal Correctional Institution ("FCI") Allenwood Medium pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), in light of the risk that the COVID-19 pandemic presents to his health. *See* Dkt. 542 ("Def. Mem."). The Government opposes his request. *See* Dkt. 544 ("Gov't Mem."). For the reasons that follow, the Court denies Sanchez's application.

Between 2015 and 2018, Sanchez acted as a wholesaler of large quantities of heroin, mostly mixed with fentanyl, in co-defendant Maurice Hartley's drug trafficking organization ("Hartley DTO"). *See* Gov't Mem. at 1; Dkt. 347 ("Sent. Tr.") at 28–29. Sanchez received the heroin on a near-daily basis from Hartley, packaged it into bundles of 10 glassines, and resupplied lower-level dealers on the same schedule. *See* Gov't Mem. at 1; Sent. Tr. at 29. During the time in question, Sanchez was responsible for supplying between 12 and 36 kilograms (amounting to at least 240,000 individual glassines) of heroin mixed with fentanyl to street dealers. *See* Gov't Mem. at 2; Sent. Tr. at 29.

On December 21, 2018, Sanchez pled guilty pursuant to a plea agreement to participating in a conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin

and 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846, which carries a mandatory minimum of 120 months' imprisonment. *See* Gov't Mem. at 2. On April 9, 2019, the Court sentenced Sanchez to 120 months' imprisonment, significantly below the Guidelines range of 188 to 235 months' imprisonment. *See id.* at 2–3; Sent. Tr. at 42–44. Sanchez has been incarcerated since his arrest in June 2018, and so has served approximately 34 months of his stated sentence. *See* Gov't Mem. at 1. His expected release date is January 8, 2027. *See id.* at 3. He has thus served about 28% of his 120-month stated sentence, or about 33% of his expected sentence.

On February 11, 2021, the Court received a letter from Sanchez's counsel, Lorraine Gauli-Rufo, Esq., asking that she be re-appointed to file a compassionate release motion on behalf of Sanchez. Dkt. 529. The Court granted the request. Dkt. 530. On March 17, 2021, Ms. Gauli-Rufo filed that motion, arguing that Sanchez's medical conditions and rehabilitation support a reduction in sentence to time served. Def. Mem. at 1–3. On April 1, 2021, the Government opposed that request, arguing that Sanchez's release at this time would conflict with the sentencing factors set forth in 18 U.S.C. § 3553(a).

> Under 18 U.S.C. § 3582(c)(1)(A), a court
>
> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf . . . may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that— (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant bears the burden of proving that he is entitled to compassionate release under 18 U.S.C. § 3582(c). *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the

circumstances warrant that decrease."); *United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit prisoners to initiate compassionate release proceedings and instead required the Bureau of Prisons ("BOP") to seek such release on their behalf. *United States v. Ebbers*, 432 F. Supp. 3d 421, 422–23, 427 (S.D.N.Y. 2020). But with the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, Congress amended the law to allow defendants independently to seek compassionate release from federal courts. *Ebbers*, 432 F. Supp. 3d at 422–23.

Before the First Step Act, Congress had tasked the Sentencing Commission with identifying circumstances sufficiently extraordinary and compelling to justify a sentence reduction. *Id.* at 427 (citing 28 U.S.C. § 994(t)). The Commission did so in U.S.S.G. § 1B1.13 and its corresponding commentary. That guidance, *inter alia*, (1) sets out circumstances that present extraordinary and compelling reasons justifying release; and (2) requires that a defendant not be a danger to the community. *Id.* § 1B1.13(1)–(3) & cmt. n.1(A)–(D).

By its terms, however, the Commission's guidance applies only to a "motion of the Director of the Bureau of Prisons." *Id.* § 1B1.13. And the Commission has not updated § 1B1.13 or its commentary to reflect the First Step Act's amendment to § 3582(c)(1)(A) authorizing defendants to move for compassionate release on their own, without BOP intervention. Accordingly, although courts—including this one—had treated the Commission's guidance as applicable to all compassionate release motions, *see, e.g.*, *United States v. Hernandez*, 451 F. Supp. 3d 301, 303 (S.D.N.Y. 2020); *see also Ebbers*, 432 F. Supp. 3d at 428, the Second Circuit has recently clarified that § 1B1.13 "is not 'applicable' to compassionate release motions brought by defendants," rather than by the BOP, and "cannot constrain district

courts' discretion to consider whether any reasons are extraordinary and compelling" in such cases. *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020); *see also id.* at 237 ("Neither Application Note 1(D), *nor anything else in the now-outdated version of Guideline § 1B1.13*, limits the district court's discretion." (emphasis added)).

Consistent with *Brooker*, in assessing a § 3582(c) motion brought directly by a defendant, the Court is not constrained by either § 1B1.13's enumeration of extraordinary and compelling reasons or by its freestanding requirement that the defendant seeking release not pose any danger to the community. Rather, the Court, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," 18 U.S.C. § 3582(c)(1)(A)(i), may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Brooker*, 976 F.3d at 237.

Here, the Government concedes that Sanchez's medical conditions—including his obesity and asthma—present extraordinary and compelling reasons for release under § 3582(c). Gov't Mem. at 11; *see* Def. Mem. at 2. The Court agrees with that assessment. The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration. The crowded nature of federal prisons in particular presents an outsized risk that the COVID-19 contagion, once it gains entry, will spread.[1] In that respect, COVID-19 poses a heightened health risk to all inmates.

---

[1] *See* Timothy Williams, et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (May 20, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, 450 F. Supp. 3d 491, 492 (S.D.N.Y. 2020) (citing *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control & Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf) (highlighting danger faced by those in jails and prisons).

And a high-risk inmate like Sanchez who contracts the virus while in prison will, in all likelihood, face challenges in caring for himself. Beyond the risks to health, the pandemic has also subjected all inmates to far more restrictive conditions of confinement, and has prompted limits on access to visitors, including family, far beyond what could have been expected at sentencing. For these reasons, in the past months, various courts, including this one, have ordered the temporary release of inmates held in pretrial or presentencing custody[2] and the compassionate release of high-risk inmates serving federal sentences.[3]

The presence of extraordinary and compelling reasons for early release, however, is only a threshold prerequisite for granting such release. The Court must also assure itself that release accords with "the factors set forth in section 3553(a) to the extent that they are applicable" before doing so. 18 U.S.C. § 3852(c)(1)(A). Here, the Court finds, these factors are inconsistent with the reduction of Sanchez's sentence by approximately two-thirds, as he requests.

---

[2] *See, e.g.*, *United States v. Chandler*, --- F. Supp. 3d ---, No. 19 Cr. 867 (PAC), 2020 WL 1528120, at *1–3 (S.D.N.Y. Mar. 31, 2020) (granting bail application, under 18 U.S.C. § 3142(i), of defendant charged with being a felon in possession of a firearm); *United States v. McKenzie*, 450 F. Supp. 3d 449 (S.D.N.Y. 2020) (granting bond pending sentencing, under 18 U.S.C. § 3145(c), to defendant who had pleaded guilty to single count of assault with a deadly weapon and had been released on bond); *United States v. Witter*, No. 19 Cr. 568 (SHS), Dkt. 40 at 2–3 (S.D.N.Y. Mar. 26, 2020) (granting bond pending sentencing, under § 3145(c), to defendant who had pleaded guilty to a narcotics offense).

[3] *See, e.g.*, *United States v. Mcrae*, No. 17 Cr. 643 (PAE), 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021) (granting compassionate release to defendant with medical conditions putting him at heightened risk of severe COVID-19 and who had served 75% of effective sentence); *United States v. Lizardi*, No. 11 Cr. 1032 (PAE), Dkt. 2532 at 1–2, 9 (S.D.N.Y. Oct. 9, 2020) (same for defendant who had served 93 months of a 121-month sentence and was scheduled to be released to a halfway house in five months); *United States v. Benjamin*, No. 15 Cr. 445 (PAE), Dkt. 1144 at 6–7 (S.D.N.Y. Sept. 15, 2020) (same for defendant with asthma who had served nine years of his 10-year sentence); *United States v. Wilson*, No. 16 Cr. 317 (PAE), Dkt. 656 at 4–7 (S.D.N.Y. Aug. 31, 2020) (same for defendant with heighted vulnerability who had served the substantial majority of his sentence and played a low-level role in a drug trafficking conspiracy); *United States v. Simon*, 482 F. Supp. 3d 151, 154–56 (S.D.N.Y. 2020) (same for elderly defendant, who had serious medical conditions and played a low-level role in a drug trafficking conspiracy).

To be sure, the possibility that Sanchez might contract COVID-19 in prison lends greater weight to two of the § 3553(a) factors than could have been expected at the time of sentencing: the "history and characteristics of the defendant" and "the need to provide the defendant with needed . . . medical care." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(D). That is especially so given Sanchez's heightened vulnerability to severe COVID-19.

But even so, the Court cannot find that a sentence reduction on the order that Sanchez now seeks would result in a sentence commensurate with the other § 3553(a) factors, including the need for the sentence imposed to reflect just punishment, protect the public, and provide specific deterrence. As the Court remarked at sentencing, Sanchez's conduct—which involved dealing a "breathtaking amount of heroin and fentanyl"—was "gravely serious" and "terribly destructive." *See* Sent. Tr. at 29. The Court further noted that Sanchez and the Harley DTO were "meaningful contributor[s]" to the "heroin and [] opioid epidemic," and that there was "strong circumstantial evidence" that at least five drug overdose deaths were connected to the drugs sold by the Harley DTO. *See id.* at 29–30. And the Court explained that based on its knowledge of the other defendants in this case, Sanchez was responsible for a "good deal more drugs" than comparable co-defendants in the organization. *See id.* at 29. The evidence as to Sanchez's offense and substantial criminal history of eight prior convictions led the Court to conclude that a significant sentence was necessary to further the interest in specific deterrence. *See id.* at 32–36 ("I have an obvious concern . . . that you may return to crime again, whether drug selling or another crime of the sort you have previously committed . . . ."). Granting Sanchez compassionate release at this point would result in a sentence substantially below the 120-month mandatory minimum. The Court cannot conclude that a sentence roughly one-third

of that which it found to be the lowest reasonable one in 2019 accords with the important interests undergirding the § 3553(a) factors.

Sanchez's circumstances thus contrast with those of various sentenced defendants whose release the Court *has* ordered in recent months pursuant to § 3582(c), who had generally served far greater proportions of their sentences than Sanchez has here. *See, e.g.*, *United States v. Ciprian*, No. 11 Cr. 1032 (PAE), Dkt. 2581 at 2, 7–9 (S.D.N.Y. Feb. 1, 2021) (granting compassionate release for defendant who had served 98 months of 120-month sentence); *Lizardi*, No. 11 Cr. 1032 (PAE), Dkt. 2523 at 2 (same for defendant who had served nearly 93 months of his 121-month sentence, and was expected to be released to a halfway house in five months); *Benjamin*, No. 15 Cr. 445 (PAE), Dkt. 1144 at 6–7 (same for defendant with asthma and who had served nine years of his 10-year sentence); *Wilson*, No. 16 Cr. 317 (PAE), Dkt. 656 at 4–7 (same for defendant who had served over half of his stated sentence and nearly two-thirds of his actual sentence); *United States v. Knox*, No. 15 Cr. 445 (PAE), 2020 WL 1673140, at *1–2 (S.D.N.Y. Apr. 6, 2020) (same for defendant who had served all but seven months of an 88-month sentence); *Hernandez*, 451 F. Supp. 3d at 305 (same for defendant who had served 17 months of a 24-month sentence and was scheduled for release in four months).

Sanchez's circumstances also contrast with those of his co-defendants whose release the court has ordered in recent months pursuant to § 3582(c), all of whose age and/or medical condition posed a substantially greater susceptibility to COVID-19 and who had served a greater proportion of their respective sentences than Sanchez has. *See, e.g.*, *Simon*, 482 F. Supp. 3d at 154–56 (granting compassionate release for 72-year-old co-defendant with HIV, chronic obstructive pulmonary disorder, Hepatitis C, prostate cancer, and hypertension who had served well over half of a 44-month sentence); *United States v. Davies*, 18 Cr. 390 (PAE), Dkt. 479

7

at 4–6 (S.D.N.Y. June 26, 2020) (same for 60-year-old co-defendant with high blood pressure, hypertension, and obesity who had served half of a 50-month sentence); *United States v. Brown*, 18 Cr. 390 (PAE), Dkt. 472 at 4–7 (S.D.N.Y. June 17, 2020) (same for 65-year-old co-defendant with HIV, Hepatitis C, hypertension, and partial paralysis from a past stroke); *United States v. Jasper*, 18 Cr. 390 (PAE), Dkt. 441 at 2–4 (S.D.N.Y. Apr. 6, 2020) (same for co-defendant with an immune-inflammatory disease who had 34 days left to serve of a four-month sentence). Sanchez's circumstances are instead more appropriately compared to those of his co-defendants who, like Sanchez, are significantly younger, had similar medical conditions to Sanchez, and who had also not served more than half of their respective sentences. *See, e.g.*, *United States v. Carter*, 18 Cr. 390 (PAE), Dkt. 528 at 1–2 (S.D.N.Y. January 25, 2021) (denying compassionate release for co-defendant with obesity who had served half of his sentence); *United States v. Carter*, 18 Cr. 390 (PAE), Dkt. 523 at 1–2 (S.D.N.Y. Dec. 14, 2020) (same for co-defendant with obesity who had served 30 months of an 84-month sentence); *United States v. Benitez*, 18 Cr. 390 (PAE), Dkt. 492 at 2, 7 (S.D.N.Y. July 23, 2020) (same for a 37-year-old co-defendant of Sanchez with asthma and other medical conditions who had served less than half of his sentence).

As a result, even crediting Sanchez's representation that he has used his time in prison productively, *see* Def. Mem. at 7, a reduction of his sentence to time served, at this point, would substantially disserve the § 3553(a) factors, viewed holistically. In so finding, the Court does not rule out that a later motion for early release under § 3582(c), made considerably deeper into Sanchez's sentence, and therefore resulting in a much lesser reduction of sentence, could be compatible with § 3553(a). Sanchez's various health conditions (in light of COVID-19) and the substantial, and unexpected, rigors of incarceration during the pandemic, even if insufficient to

justify a grant of compassionate release today, may justify a somewhat earlier release than his present sentence contemplates. The Court's ruling today therefore is without prejudice to Sanchez's right to move again under § 3582(c) for compassionate release at a later point, substantially further into his term of imprisonment.

Accordingly, despite the extraordinary and compelling circumstances presented by the COVID-19 pandemic—and the danger they pose to Sanchez—at this time, the § 3553(a) factors are not compatible with the reduction of sentence sought. The Court therefore denies Sanchez's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: April 19, 2021
       New York, New York